IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION


RICHARD KELLEY HARTE,

    Plaintiff,

v.                                     CASE NO. 4:11cv351-RH/WCS

CITY OF TALLAHASSEE, etc.,
et al.,

    Defendants.

_____/


## ORDER GRANTING SUMMARY JUDGMENT

      The plaintiff Richard Kelley Harte's wife Barbara Jensen Harte drowned in a hot tub shortly before dawn on November 19, 2006. The hot tub was in the bathroom adjoining the master bedroom in the couple's home. Mr. Harte was the only other person in the bedroom or bathroom at the time of the drowning. The Tallahassee Police Department conducted a thorough investigation over a period of months and concluded that Mr. Harte murdered his wife. On March 6, 2007, lead investigator Jeff Mahoney signed a probable cause affidavit and submitted it to a state trial judge. The judge promptly issued an arrest warrant. Mr. Harte was arrested, brought before a different state trial judge, and detained pending trial. On

April 20, 2007, the state attorney dropped all charges, apparently concluding that the evidence was insufficient to establish Mr. Harte's guilt beyond a reasonable doubt.

Mr. Harte's second amended complaint asserts claims against Mr. Mahoney and the City of Tallahassee under 42 U.S.C. § 1983 and state law. The defendants moved for summary judgment. This order confirms the ruling announced on the record at the conclusion of an extended hearing on the motion. The order also confirms the earlier abandonment or dismissal of claims that Mr. Harte asserted against other parties.

Probable cause is a complete defense to claims of this kind. *See*, *e.g.*, *Rankin v. Evans*, 133 F.3d 1425 (11th Cir. 1998) (holding that the defendant sheriff in his official capacity and deputy in his individual capacity were entitled to judgment as a matter of law on § 1983 and state-law claims arising from the arrest of an innocent person because there was probable cause for the arrest). Probable cause exists when "the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed . . . an offense." *Wood v. Kesler,* 323 F.3d 872, 878 (11th Cir. 2003) (quotation and internal citation omitted). "Probable cause requires more than mere suspicion, but

does not require convincing proof." *Bailey v. Bd. of Cnty. Comm'rs of Alachua Cnty., Fla.,* 956 F.2d 1112, 1120 (11th Cir. 1992).

Mr. Mahoney and the other officers had reasonably trustworthy information that Mr. Harte had physically abused Mrs. Harte over a long period. The information came from Mrs. Harte's personal physician's examination and report to law enforcement just three months before the drowning as well as from interviews with friends and relatives in whom Mrs. Harte confided. The medical examiner's autopsy indicated that Mrs. Harte had suffered blunt force trauma to the head in at least three locations and had incurred extensive bruising to multiple parts of the body at or near the time of death.

Mr. Harte denied ever having physically abused Mrs. Harte. Mr. Harte told officers that he had been with Mrs. Harte for most of the 24 hours preceding her death. He described her activities in a way that gave no hint of any innocent explanation for the blunt force trauma or bruising. He also said that before her death Mrs. Harte had only part of a single drink and took no drugs. Asked whether Mrs. Harte used cocaine, Mr. Harte said she may have tried it years ago. As it turned out, a laboratory analysis showed a high level of cocaine in Mrs. Harte's blood and alcohol nearly three times the legal limit. Interviews indicated that Mr. Harte well knew Mrs. Harte used cocaine more recently than he acknowledged.

There was no evidence that Mrs. Harte committed suicide or could have done so by drowning herself in the tub.  Neither side contends suicide was a possibility.  There was no evidence that anyone other than Mr. Harte was in the bedroom or bathroom or could have caused Mrs. Harte to drown.  Neither side contends anyone other than Mr. Harte could have done her harm.  The reasonable possibilities were only two: that the drowning was accidental, or that Mr. Harte killed her.  The evidence of murder was not conclusive, but it was enough to establish probable cause.

To be sure, there also was evidence supporting the possibility that the drowning was accidental.  A person impaired with this level of cocaine and alcohol could easily pass out or go to sleep in a hot tub and drown.  A person in a tub could bump her head—perhaps even repeatedly—be rendered unconscious and drown.  Mr. Harte explains his failure to advise officers that Mrs. Harte was impaired by saying she hid her alcohol and drug use from him.  None of this explains the bruising, but bruising can occur for as long as a person has blood pressure and, at least in areas where blood settles with the aid of gravity, even after death.  Perhaps some or all of the bruises occurred during efforts to revive Mrs. Harte, including through vigorous CPR.[1]

---

[1] Mr. Harte also says Mrs. Harte bruised easily, especially when drunk and stumbling, and that Mr. Mahoney should have included this in his probable-cause affidavit.  It is a curious theory.  Mr. Harte told officers he was with Mrs. Harte in

The state attorney concluded that the evidence was insufficient to establish guilt beyond a reasonable doubt. The Constitution allows a prosecution to go forward based on probable cause, but a prudent prosecutor sometimes elects not to do so. A conviction, after all, requires proof beyond a reasonable doubt, and it benefits nobody to take a criminal case to trial and lose. Still, a malicious prosecution action requires not just that the accused ultimately avoids conviction, but also an absence of probable cause. Mr. Harte's claims all fail because the record establishes as a matter of law that there was probable cause to believe he murdered his wife.

An alternative basis for the summary judgment in Mr. Mahoney's favor is qualified immunity. Qualified immunity applies to damages claims against public employees and protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). *See generally Hope v. Pelzer*, 536 U.S. 730 (2002); *Harlow v. Fitzgerald*, 457 U.S. 800 (1982). Thus a public employee may be held individually liable only if the employee's conduct violates clearly established law. There was not at the relevant time and still is not any authority clearly establishing that probable cause is lacking in circumstances like these.

---

the hours before her death and that she was not falling-down drunk. He did not say she fell or incurred any injury at all; she had only a sore shoulder of long standing. In any event, it would be remarkable to fall on one's own, even repeatedly, and incur this number and widespread array of bruises.

Case No. 4:11cv351-RH/WCS

Finally, Mr. Harte properly abandoned his § 1983 claims against the City. *See, e.g., Monell v. Dep't of Soc. Servs. of the City of N.Y.*, 436 U.S. 658, 694 (1978) (holding that a city can be held liable under § 1983 for a constitutional violation only if the violation was based on a city policy or custom or the employee who committed the violation is one whose edicts or acts may fairly be said to represent official policy). Mr. Harte thus asserts claims against the City only under Florida law. The City asserts that under Florida law a city cannot be held liable for malicious prosecution,[2] cannot be held liable for false arrest or imprisonment based on an arrest made under an active warrant that was issued by a judge and is valid on its face,[3] and cannot be held liable for an arrest on any other theory including

---

[2] The state has not waived sovereign immunity for itself or its political subdivisions, including cities, for an act "committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." Fla. Stat. § 768.28(9)(a). Courts have held that because "malice" is an essential element of a malicious prosecution claim, the waiver of sovereign immunity does not extend to a malicious-prosecution claim. *See Fla. Dep't of Envtl. Prot. v. Green*, 951 So. 2d 918, 920 (Fla. 4th DCA 2007); *Johnson v. State Dep't of Health & Rehab. Servs.*, 695 So. 2d 927, 930 (Fla. 2d DCA 1997); *Geidel v. City of Bradenton Beach*, 56 F. Supp. 2d 1359, 1370 (M.D. Fla. 1999).

[3] The theory is that an arrest under a valid warrant can be malicious but cannot be false. *See Smith v. Beseler*, No. 3:10-cv-578-J-32MCR, 2011 WL 6813226 at *8 n.18 (M.D. Fla. Dec. 28, 2011) (collecting cases); *see also Johnson v. Weiner*, 19 So. 2d 699, 700 (Fla. 1944); *S.H. Kress & Co. v. Powell*, 180 So. 757, 762 (Fla. 1938); *Jackson v. Navarro*, 665 So. 2d 340, 341 (Fla. 4th DCA 1995).

negligence.[4]  The City cited substantial authorities in support of its assertions, and Mr. Harte failed to respond.  Accepting the City's assertions would provide an alternative basis for summary judgment in its favor.  But the law may not be as clear in all respects as the City suggests.  I decline to reach the issue because doing so is unnecessary to the result.

For these reasons and those set out a greater length on the record,

IT IS ORDERED:

The defendants' summary-judgment motions, ECF No. 48 and 50, are GRANTED.  The clerk must enter judgment stating, "The plaintiff Richard Kelley Harte's claims against the defendants City of Tallahassee, Florida, and Jeff Mahoney are dismissed with prejudice.  Any claims against other parties are dismissed."  All other motions are denied as moot.  The clerk must close the file.

SO ORDERED on April 3, 2012.

                            s/Robert L. Hinkle
                            United States District Judge

---

[4] The theory is that malicious prosecution and false arrest are intentional torts that cannot be supplanted by a negligence claim.  *See Hernandez v. Metro-Dade Cnty.*, 992 F. Supp. 1365, 1368 (S.D. Fla. 1997) ("[N]egligence stemming from an arrest and/or imprisonment is subsumed by the tort of false arrest/false imprisonment."); *see also Harris v. Kearney*, 786 So. 2d 1222, 1226 (Fla. 4th DCA 2001); *Carpenter v. City of St. Petersburg*, 547 So. 2d 339, 341 (Fla. 2d DCA 1989).  This result also draws support from the impact rule.